UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| B2B ROCKET, LLC, and NOAH LOUL, | |
|---|---|
| Plaintiffs, | |
| -against- | 24-cv-1063 (AS) |
| KALENDAR INC., | OPINION AND ORDER |
| Defendant. | |

ARUN SUBRAMANIAN, United States District Judge:

Defendant Kalendar Inc. moves to dismiss Plaintiffs B2B Rocket LLC's and Noah Loul's amended complaint. For the following reasons, Kalendar's motion is DENIED in part and GRANTED in part.

## BACKGROUND

B2B develops artificial intelligence "agents" that other businesses use to find sales leads. Am. Compl. ¶ 14, Dkt. 29. Kalendar is a competitor of B2B. ¶ 15. In 2023, B2B and Kalendar entered into a business relationship where Kalendar would source sales leads for B2B. ¶ 17.

At some point, Kalendar complained that B2B was using an email footer that was identical to Kalendar's. ¶ 18. They entered into a settlement agreement, which purported to resolve all issues between the parties. ¶¶ 20–26. (It isn't clear from plaintiffs' complaint why this email footer caused any dispute. But according to counterclaims brought by Kalendar, Kalendar thought the footer was evidence that plaintiffs were "scrap[ing]" Kalendar's intellectual property. Dkt. 5 ¶ 81.).

The settlement agreement also touched on the parties' ongoing business relationship. Am. Compl. ¶ 27. Among other things, the agreement stated that the parties should keep each other's confidential information "in strict confidence" and that neither side would "disclose or use (except as expressly authorized by this Agreement) the Confidential Information for any purpose outside the scope of this Agreement." ¶ 29.

As part of their continuing relationship, B2B shared confidential and proprietary marketing strategies with Kalendar. ¶ 34. Plaintiffs say that Kalendar "copied and duplicated" the material without consent. ¶ 35. Kalendar also allegedly used Loul's and B2B's names on sales demo calls and presentations, during onboarding, in marketing material, and on social media. ¶ 36. Plaintiffs say that Kalendar marketed and advertised that its products are endorsed by Loul and B2B. ¶ 37.

Plaintiffs also claim that Kalendar attempted to access B2B's platform without authorization. ¶ 38. Plaintiffs say this was "presumably to surreptitiously obtain access to [B2B's] systems and trade secrets as well as its proprietary and confidential information." ¶ 38.

**LEGAL STANDARDS**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). In deciding a motion to dismiss, well-pleaded factual allegations are accepted as true, and all reasonable inferences are drawn in the non-movant's favor. *Cornelio v. Connecticut*, 32 F.4th 160, 168 (2d Cir. 2022). While detailed factual allegations are not necessary, "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**DISCUSSION**

### I. Lanham Act & unjust enrichment

Kalendar says plaintiffs waived any Lanham Act claim by agreeing to Kalendar's 2022 Terms of Use. Kalendar urges the Court to take judicial notice of the terms, saying that the "2022 Terms of Use [were] in force when the Plaintiffs signed up" for its platform. Dkt. 31 at 8. But there is nothing in the complaint that indicates when (or if) plaintiffs "signed up" for Kalendar's platform. Plus, the complaint says that the parties' business relationship started in 2023, so it's not clear why the 2022 Terms of Use would control. And there is nothing else in the complaint that discusses the Terms of Use. Kalendar is free to raise this argument at summary judgment, but the Court cannot consider it here, since doing so would require going well beyond the allegations in the complaint.

Kalendar also argues that the amended complaint does not contain sufficient allegations as to when, where, or how Kalendar falsely advertised. But plaintiffs allege that since October 2023, Kalendar has used B2B's name and Loul's name and likeness in advertising and promotional material (*e.g.*, sales demo calls, sales demo presentations, onboarding material, marketing materials, social media) and has misrepresented that Kalendar's products and services are endorsed by plaintiffs. Am. Compl. ¶¶ 3, 36–37. So the Court is persuaded that plaintiffs have provided sufficient detail at this stage. *See Clauson v. Eslinger*, 455 F. Supp. 2d 256, 262 (S.D.N.Y. 2006).

Plus, Kalendar's motion to dismiss indicates that Kalendar knows exactly what advertising and promotional materials plaintiffs are referring to. Kalendar just disputes plaintiffs' claim that the material was inaccurate. *See* Dkt. 31 at 10 ("The Defendants will proffer that at an earlier time, they prepared a sales deck which included an accurate quote from the Plaintiffs."). Kalendar's motion is therefore denied with respect to plaintiffs' Lanham Act claim.

Plaintiffs' claim for unjust enrichment is premised on the same alleged misuse of Loul's name and likeness and B2B's name. Am. Compl. ¶¶ 60–61. Kalendar says that dismissal of this claim is also warranted because of the 2022 Terms of Use and because plaintiffs do not plead sufficient facts supporting this claim. As just explained, both arguments fail, and so Kalendar's motion is also denied with respect to plaintiffs' unjust-enrichment claim.

### II. General Business Law

"To make out a prima facie case under Section 349, a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material

way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000). Kalendar argues that plaintiffs' § 349 claim should be dismissed because plaintiffs have not alleged that any deceptive actions by Kalendar were consumer oriented. The Court disagrees. Plaintiffs say that Kalendar (a competitor) used B2B and Loul in public marketing material to deceive customers into thinking that plaintiffs endorsed Kalendar's products. The allegations are not just that customers were confused, but rather that Kalendar's customer-targeted marketing material was deliberately false. At this stage, the Court finds these allegations of a deceptive "marketing scheme" sufficient. *N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.*, 953 N.Y.S.2d 96, 101 (2d Dep't 2012).

### III. Unfair competition/misappropriation

Kalendar says the Court should dismiss plaintiffs' claim for unfair competition and misappropriation. Kalendar says that "[n]o factual allegations are provided" to substantiate this count of the complaint. Dkt. 31 at 12. The Court disagrees. While the complaint is far from detailed, it does explain that Kalendar (B2B's competitor) duplicated B2B's marketing material without its consent, used plaintiffs' names in marketing material to create the impression that they were endorsing Kalendar's products, and then tried to obtain access to B2B's system. At this stage in the litigation, these allegations of misappropriation and bad-faith Lanham Act violations are enough to allow the unfair-competition claim to proceed. *See Makina Ve Kimya Endustrisi A.S., v. A.S.A.P. Logistics Ltd.*, 2024 WL 3638054, at *8 (S.D.N.Y. Aug. 2, 2024) ("An unfair competition claim under New York common law requires all the elements of a Lanham Act unfair competition claim plus a showing of bad faith." (citation omitted)).

### IV. Breach of contract

Plaintiffs next bring a claim for breach of contract related to the parties' settlement agreement (which the parties entered into after Kalendar accused plaintiffs of scraping its intellectual property). Kalendar says that plaintiffs fail to sufficiently allege "when and how" the breach took place. Dkt. 31 at 15. But to the contrary, plaintiffs allege that the settlement agreement stated that the parties agreed "not to disclose or use (except as expressly authorized by this Agreement) the Confidential Information for any purpose outside the scope of this Agreement." Am. Compl. ¶ 29. Plaintiffs also say that, after this agreement was signed, "B2B shared its confidential and proprietary marketing strategies with Kalendar," including "media and Internet marketing strategies, processes and technologies." ¶ 34. Rather than keep that information confidential, "Kalendar copied and duplicated" it without plaintiffs' written consent. ¶ 35. Plaintiffs therefore claim that Kalendar breached the "No Copy Clause" in the settlement agreement "by copying and duplicating B2B's online marketing strategies without the express written consent of B2B." ¶ 67. So plaintiffs have stated a breach of contract claim.

Kalendar points to plaintiffs' allegations regarding Kalendar's "*attempt*[] to access B2B's platform, presumably to surreptitiously obtain access to its systems and trade secrets as well as its proprietary and confidential information." Am. Compl. ¶ 38 (emphasis added). Focusing on the word "attempt," Kalendar says this allegation proves that "no copying could have or would have been" completed because the breach was just attempted, it didn't succeed. Dkt. 31 at 16. But it's

not clear that the unauthorized intrusion is the sole focus of this claim (if it has anything to do with it at all). Plaintiffs more generally allege that by virtue of Kalendar's access to materials due to the parties' business relationship, it "cop[ied] and duplicat[ed] B2B's online marketing strategies without the express written consent of B2B." Am. Compl. ¶ 67.

Kalendar also says that plaintiffs' breach-of-contract claim should be dismissed because plaintiffs allege that there is no adequate remedy at law. But Kalendar does not cite any cases where including this allegation warranted dismissal of a contract claim, nor would such an argument make any sense. Rather, this kind of language is often included in contracts and court pleadings to suggest that equitable relief—such as an injunction—is warranted based on the nature of the alleged violation. Under those circumstances, while damages may be recovered, they may not be "adequate" to provide the plaintiff full relief. This has nothing to do with whether plaintiffs' contract claim has legs or not.

### V. Breach of implied covenant of good faith and fair dealing

Finally, Kalendar moves to dismiss plaintiffs' claim for breach of the implied covenant of good faith and fair dealing. This dismissal is warranted. Plaintiffs appear to be alleging only that Kalendar breached the written terms of the agreement, rather than any implied duty. Plaintiffs state: "Kalendar breached the contract and *violated the terms of the Agreement*" and that "[b]y doing so, Kalendar did not act fairly and failed to act in good faith." Am. Compl. ¶¶ 71–72 (emphasis added). Plaintiffs further allege that Kalendar "fail[ed] to honor *the terms of the Agreement.*" ¶ 73 (emphasis added). Plaintiffs never allege a breach of any implied duty. So the claim for breach of an implied covenant fails. *See also Wu v. JP Morgan Chase Bank, N.A.*, 2024 WL 732116, at *3 (S.D.N.Y. Feb. 22, 2024) ("[T]he implied covenant does not nullify express terms of the contract or otherwise create independent contractual rights.").

### CONCLUSION

As explained above, Kalendar's motion to dismiss is DENIED in part and GRANTED in part. Kalendar also requests that Ravi Vadrevu be dismissed from this case because he was not named as a party in the amended complaint. No relief is needed here as Vadrevu was automatically dismissed from the case with the filing of the amended complaint.

The Clerk of Court is directed to terminate Dkt. 30.

SO ORDERED.

Dated: August 15, 2024
       New York, New York

_____
ARUN SUBRAMANIAN
United States District Judge